[Cite as *Albrecht v. Albrecht*, 2014-Ohio-5464.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| RUTHANN D. ALBRECHT, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-T-0124** |
| STEPHEN L. ALBRECHT, | : | |
| Defendant-Appellant. | : | |

Appeal from the Trumbull County Court of Common Pleas, Domestic Relation Division, Case No. 2012 DR 297.

Judgment: Affirmed.

*Anthony G. Rossi, III*, Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482, and *Deborah L. Smith*, 109 North Diamond Street, Mercer, PA 16137 (For Plaintiff-Appellee).

*Michael J. McGee*, Harrington, Hoppe & Mitchell, LTD., 108 Main Avenue, S.W., Suite 500, Warren, OH 44481 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This case is from the Trumbull County Court of Common Pleas, Domestic Relations Division. Appellant Stephen L. Albrecht ("Husband") appeals the trial court's spousal support order requiring him to pay $2,750 monthly to Ruthann D. Albrecht ("Wife"). On appeal, Husband asserts that the trial court failed to consider various R.C. 3105.18(C)(1) factors in fashioning a spousal support award; that the court's finding that Wife was unable to work is against the manifest weight of the evidence; and that

the trial court abused its discretion in awarding spousal support for an indefinite duration. For the following reasons, we affirm.

{¶2} In August 2012, Wife filed a complaint for divorce. Around a year later, the parties reached an agreement concerning the division of property and debt and entered those stipulations into the record. The trial court retained jurisdiction to determine spousal support in a subsequent hearing.

{¶3} At that hearing, Husband testified that he and Wife were married in 1986 and have been married for 25 years. Husband further testified that Wife got into a bad car accident before they were married. He acknowledges that Wife may have been in a coma, that she has difficulty with fine motor skills "on her right side," and has difficulty walking. Husband is aware that Wife claims she has difficulty with short-term memory, but claims that he has never noticed any problem in that regard. Husband also believes that Wife's IQ is higher than his own, and that her disability does not affect her mental capacities. Husband testified that Wife can carry out day-to-day activities. Other than a knee injury and high blood pressure, Husband is in good health.

{¶4} As for employment and income, Husband has been working for 20 years at the same company as an electrician. In 2011, he earned $125,000, and in 2012, he earned $115,000. Husband did not know his 2013 income at the time of the hearing; however, he believed that it would be close to his 2012 level. Husband can begin to draw his pension when he turns 67 and one-half years old and believes his 401k has $215,000 in it.

{¶5} According to Husband, Wife's employment was limited during the marriage. After their children had grown, Wife thought about returning to school to

2

become a physical therapist, but elected not to go back due to cost. Wife received training to assist in a nursing home, but quit her job. In 2009, Wife had a job working at a BP gas station, and was fired after 30 days because the job was too fast for her. Generally speaking, Wife was a stay-at-home mom during the marriage, and did not pursue sustained periods of employment after the children were emancipated. Husband also testified that Wife has an unspecified number of IRAs and mutual funds. He was also aware that Wife had recently been awarded social security benefits because of her disability. At trial, Husband testified Wife receives $600 per month in social security benefits; however, Wife testified and the trial court found that Wife receives social security benefits of approximately $59 per month. Husband does not contest this finding on appeal.

{¶6} Wife testified that she was in a car accident when she was 16 years old. From what we can gather, she was a passenger in a car that was hit by a semi truck. Wife testified that after the accident she was in a coma for seven to nine months and was confined to a wheelchair for three years. According to Wife, she has trouble with her short-term memory, difficulty with fast jobs, and the "brain signals" to her right arm are not working. When she met Husband, her condition was worse than it is now. Throughout the marriage, Wife had bumped into people on accident and was involved in car accidents several times. Wife attributed these events to her disability.

{¶7} Wife testified that the highest school degree she has received is a high school diploma, although she did take a computer course at Kent State University. She also acknowledged that she conducted brain stem injury research for colleges. She also testified that she quit her job at the nursing home because her disability was

3

affecting her balance. Otherwise, Wife generally agrees with Husband's characterization of her work history.

{¶8} As for income and expenses, Wife testified that the current order of spousal support was $1,700 a month and that her car insurance costs $60 per month and her car payment is $350 per month. On cross-examination, Husband's counsel attempted to show that Wife's budget for food expenses was too high at $350 per month and that she had other sources of income. Wife also testified that she received a $200,000 settlement from her car accident. Although the parties dispute how this money was spent, Wife maintains that the money was spent during the marriage while Husband maintains that $48,000 is left in investments.

{¶9} After the hearing, the trial court ordered Husband to pay Wife $2,750 per month in spousal support. Husband now appeals.

{¶10} As his first assignment of error, Husband asserts:

{¶11} "The trial court erred in determining that $2,500 per month (sic) is an appropriate amount of spousal support."

{¶12} Within this assignment of error, Husband claims that the trial court did not consider the stipulations made at the first hearing regarding the division of assets and debts. He also contends that the trial court abused its discretion in considering only Wife's living expenses and not the living expenses of Husband in fashioning the award. Finally, Husband maintains that the trial court failed to make a required finding pursuant to R.C. 3105.171(G) because the trial court failed to state that the division of property was equitable.

4

{¶13} The trial court has significant discretion in awarding spousal support in a domestic relations proceeding, provided the award is "'appropriate and reasonable.'" *Bandish v. Bandish*, 11th Dist. Geauga No. 2002-G-2489, 2004-Ohio-3544, ¶14. In determining what is appropriate and reasonable under the circumstances, the trial court is to consider the factors specified in R.C. 3105.18(C)(1)(a)-(n). *Id.* at ¶14-15. The trial court's decision will not be reversed on appeal absent an abuse of discretion. *Id.* at ¶13. The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30. When an appellate court is reviewing a pure issue of law, "'the mere fact that the reviewing court would decide the issue differently is enough to find error * * *. [In] contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Sertz v. Sertz*, 11th Dist. Lake No. 2011-L-063, 2012-Ohio-2120, ¶31, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶67.

{¶14} As to the first argument, Wife responds that the trial court made numerous statements in its judgment entry demonstrating that it considered the division of assets and debts before fashioning a spousal support award. At the beginning of the trial court's findings, the trial court states "[t]he Court, after having reviewed the division of property pursuant to Ohio Revised Code Section 3105.171, evaluates the issue of spousal support * * *." Later in the judgment entry, the trial court makes findings as to the retirement benefits of the parties, and the parties' assets and liabilities. Husband acknowledges the statements in the judgment entry, but claims that the trial court used

5

a boilerplate judgment entry and did not actually consider the spousal support award factors. In short, Husband claims the award's disproportionate nature is ipso facto evidence that the trial court did not consider the parties' assets and liabilities in fashioning the award. We have been unable to find any cases where a court of appeals has found that a trial court did not consider the R.C. 3105.18(C)(1)(a)-(n) factors even though the trial court claimed it considered those factors. The parties do not direct our attention to any cases on point in that regard. Assuming, without deciding, that we can second guess a trial court's statements that it considered the spousal support factors, the spousal support award is not so large as to demonstrate that the trial court failed to consider the parties assets and liabilities before fashioning a spousal support award.

{¶15} As to Husband's second argument, Wife maintains that Husband did not present evidence of Husband's living expenses to the trial court. Although Wife does not elucidate the consequences of failing to produce this evidence to the trial court, we construe Wife's contention as claiming Husband has waived the issue. *See Schmidt v. Brower*, 11th Dist. Ashtabula No. 2010-A-0014, 2010-Ohio-4431, ¶17. It is true that Husband did not present a significant amount of evidence on his expenses; however, he did testify that his rent is $550 per month. Husband claims that he presented other evidence earlier in the course of litigation as to his living expenses, but our review of the hearing reveals that, other than his rent, Husband presented no evidence of his expenses into evidence. Therefore, the issue is confined to whether the trial court abused its discretion in not considering Husband's rent payments in fashioning a spousal support award.

6

{¶16} "A party's living expenses are not one of the specifically enumerated factors to be considered when determining spousal support. R.C. 3105.18. See, also, [*Pengov v. Pengov*, 11th Dist. Geauga No. 2002-G-2485, 2003-Ohio 6755, ¶35]. Thus, the trial court's consideration of a party's living expenses 'is discretionary and may be considered if the court finds such expenses to be relevant.' *Derrit v. Derrit*, 163 Ohio App.3d 52, 2005-Ohio-4777, [¶32]; *Pengov* at [¶35]." *Romano v. Jennison*, 11th Dist. Lake No. 2005-L-191, 2006-Ohio-6887, ¶19. The trial court here did not mention Husband's living expenses, but expressly considered Wife's living expenses in its judgment entry. Therefore, Husband argues that consideration of one spouse's living expenses must, as a matter of law, result in consideration of the other spouse's living expenses. We disagree. For instance, a trial court may be interested solely in the receiving spouse's living expenses if the trial court views the receiving spouse's need for spousal support to be a relevant consideration. We therefore conclude that the trial court was exercising its discretion and considered that factor not relevant in fashioning an award.

{¶17} As for Husband's last argument, R.C. 3105.171(G) states: "In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "'during the marriage.'" However, a trial court is not required to make findings pursuant to R.C. 3105.171(G) when fashioning a spousal support award, as R.C. 3105.171(C)(1), the relevant subsection for spousal support awards, requires the trial court to only "consider" various factors in fashioning a spousal

7

support award. *Abbas v. Abbas*, 6th Dist. Wood No. WD-01-045, 2002-Ohio-2366, ¶61; *Cooper v. Cooper*, 8th Dist. Cuyahoga No. 86718, 2006-Ohio-4270, ¶9; *but see Quigley v. Quigley*, 6th Dist. Lucas No. L-03-1115, 2004-Ohio-2464, ¶104. Even if such findings were necessary, the trial court's judgment entry clearly satisfies that requirement. R.C. 3105.171(G) states in part that "the court shall make *written findings of fact that support the determination* that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of 'during the marriage.'" (Emphasis added.) Therefore, contrary to Husband's argument there are no "magic words" needed to satisfy R.C. 3105.171(G). *See also State v. Crayton*, 8th Dist. Cuyahoga No. 81257, 2003-Ohio-4663, ¶28 ("We have repeatedly held that findings will suffice even in the absence of so called 'magic words' as long as the court demonstrated the findings intended by the Revised Code."). The trial court's judgment entry contained a detailed list of its findings for each relevant factor that it needed to consider under R.C. 3105.18(C)(1)(a)-(n). These findings are sufficient to satisfy the requirement of R.C. 3105.171(G) in the event it applied.

{¶18} The first assignment of error is without merit.

{¶19} As his second assignment of error, Husband asserts:

{¶20} "The trial court abused its discretion in finding that Ruthann D. Albrecht is unable to work."

{¶21} Here, Husband argues that the trial court's determination that Wife has a disability and therefore is unable to work is against the manifest weight of the evidence because (1) Wife did not present expert testimony as to her disability and (2) her disability lacked a specific name, such as Alzheimer's Disease. By way of clarification,

8

although Husband argues that the trial court found Wife "unable to work," that his not wholly accurate. The trial court found that Wife's short term memory and motor skill problems make it more difficult for her to work "at times." However it is clear that the trial court found Wife unable to earn a significant income in light of her limitations.

{¶22} Ohio courts have held that a medical diagnosis is unnecessary to support a finding that a spouse is unable to work. *Milam v. Milam*, 2d Dist. Greene No. 94-CA-23, 1994 Ohio App. LEXIS 4712, *6 (Oct. 19, 1994). Unlike personal injury cases, where medical testimony is required to prove a causal relationship between a physical injury and the act that gave rise to such injury, in divorce cases, the medical cause of a spouse's disability "is not an essential fact requiring proof[.]" *Id.* Rather, the crucial focus is whether the party asserting a disability presents evidence explaining how her disability limits his or herself. *See Gullia v. Gullia*, 93 Ohio App.3d 653, 662 (8th Dist.1994).

{¶23} Furthermore, in reviewing the trial court's determination of a spouse's disability, we defer to the trial court's judgment of the witnesses' credibility. *See Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, the trial court's judgment will not be reversed on appeal as being against the manifest weight of the evidence if it is supported by "some competent, credible evidence going to all the essential elements of the case." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978).

{¶24} Husband's first argument fails because Wife is not required to present expert testimony as to her disability. Second, the decision awarding Wife social security disability benefits found that Wife suffered a traumatic brain stem injury in the

9

car accident. Although the trial court does not specifically reference the social security decision, it does find that Wife suffers from brain damage. The trial court's conclusion the Wife is unable to earn a significant income is supported by the evidence.

{¶25} Therefore, the second assignment of error is without merit.

{¶26} As his third assignment of error, Husband asserts:

{¶27} "The trial court abused its discretion in ordering Stephen Albrecht to pay Ruthann Albrecht spousal support for an indefinite duration."

{¶28} The standard of review in the first assignment of error is the same here. *Clontz v. Clontz*, 11th Dist. Trumbull No. 96-T-5531, 1997 Ohio App. LEXIS 2135, *7 (May 16, 1997). The Ohio Supreme Court has held that "except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities." *Kunkle v. Kunkle*, 57 Ohio St.3d 64, 69 (1990).

{¶29} Here, Husband argues that the trial court abused its discretion in awarding indefinite spousal support because Wife possesses some marketable skills and still has time to go back to school to further develop those skills. Wife maintains the trial court did not abuse its discretion in finding that her disability limited her employment opportunities. We agree with Wife. The evidence of Wife being fired from the BP gas station because it was "too fast" and her general role as a housewife during the marriage supports the indefinite award of spousal support. Accordingly, the trial court's

10

finding that Wife's disability would be an impediment in obtaining employment is supported by the record. Consequently, the trial court did not abuse its discretion in awarding spousal support for an indefinite duration.

{¶30} The third assignment of error is without merit.

{¶31} The judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.

TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.